CLARK (SMITH v.). See Case No. 13,027.

---

## Case No. 2,835.

### CLARK v. SOHIER.

[1 Woodb. & M. 368.] [1]

Circuit Court, D. Maine. Oct. Term, 1846.

NEW TRIAL—PRACTICE—AMENDMENTS TO PLEADINGS—STATE STATUTES—PROCEEDINGS AT COMMON LAW.

1. Where a party in an action to recover a note had never enjoyed one trial in this court, but was defaulted, supposing the case was agreed to be continued, he is entitled to a trial on petition within three years, under a statute of the state of Maine, and on proof of a probably good defence.

2. That statute is not repugnant to the provision in the judiciary act of 1789 [1 Stat. 83], authorizing a new trial on motion after a verdict. But it confers an additional right, not inconsistent with the other, and not merely a new remedy for an old right.

[Cited in Conrad v. Griffey, 11 How. (52 U. S.) 491.]

---

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

3. This court is empowered to enforce rights under the statutes of states, as well as under acts of congress, when they are not hostile to the latter, and are asked to be enforced in relation to proceedings at common law.

[Cited in Upham v. Brooks, Case No. 16,-797; Perry Manuf'g Co. v. Brown, Id. 11,015; Moan v. Wilmarth, Id. 9,686; Ex parte McNeil, 13 Wall. (80 U. S.) 243.]

4. Such proceedings mean any litigation at law, as distinguished from equity or admiralty.

5. A new trial in such case is usually had by a writ of review sued out and served, rather than by bringing forward the old action, and serving a notice on the opposite side to defend.

6. In either case, all proper amendments in the pleadings will be allowed on the new trial, and the service must be on some administrator of the deceased, who has taken out letters in this state.

7. Quere, whether if one appears as administrator and defends against the petition for a new trial, he is not estopped to deny that he is an administrator in this state.

This was a petition for a new trial. The original action was a proceeding to recover a balance alleged to be due Tuckerman, a citizen of Massachusetts, from [Jonathan Clark] the executor of D. Clark, who had been a citizen of Maine. There had been a mortgage given originally to Tuckerman to secure the debt, which had been foreclosed by Tuckerman, and who averred that the premises in the mortgage so foreclosed were not worth the whole debt, and therefore presented a claim to the commissioners on Clark's estate, for about $2000 more. The commissioners decided against Tuckerman. The estate of Clark was supposed not to be in fact insolvent, and an action at law was then instituted for Tuckerman's demands, in this court, under a statute of the state of Maine allowing an action in such case, and after an appearance and one continuance, a judgment was rendered on default for Tuckerman against Clark's executor, for $2092 debt, and $34.71 costs, at the October term, 1842. Tuckerman has since died [and William D. Sohier qualified as his executor]. The petitioner avers that said action was defaulted by mistake; that there was a good defence to the same, and therefore prays that this court will grant a new trial therein.

The petition was filed September 30th, 1844, and was argued on the evidence adduced, October term, 1845.

Mr. Appleton, for petitioner.

Mr. Hobbs, for respondent.

WOODBURY, Circuit Justice. It is hardly necessary to go into a very minute examination of the evidence in this case, though I am satisfied upon it that a new trial, if it can in this way be legally granted, would be proper and judicious. The testimony on some points is conflicting, yet this much is rendered certain—that the petitioner never really had a trial of the claim against him in this court; that when he did have one before the commissioners, a decision was made in his favor. Thus that he has a defence, and had grounds to expect success in it, is placed beyond any reasonable doubt. It is equally certain, that he and his counsel intended to set up the defence; but a negotiation having been entered into for a settlement, they understood the cause would be continued till the settlement was made, or the negotiation abandoned. The other side admits the pendency of the negotiation, but denies any agreement for a further continuance. However this fact may have been, it will be seen, that the petitioner acted under a different impression, and has thus lost an opportunity of laying his defence before a court and jury, unless a new trial can be obtained.

The objection made to a new trial on account of the delay to petition for two years after the default, is no legal bar, as the statute of Maine allows three years, and in an equitable view, is answered by the fact of the continued pendency of the negotiation for a settlement up to the time of filing the petition. But another difficulty which occurred to me at the hearing, and was named to the petitioner's counsel, was not, I regret to say, been removed entirely; but still it is so far overcome as to induce the court to grant a new trial. It was, that the 17th section of the judiciary act of congress, of September, 1789, which empowers us to grant new trials, does it only in cases "where there has been a trial by jury." 1 Stat. 83. Here there has been no such trial by a jury. Hence it cannot be granted under that act. But in some states, by special laws, though in technical language it is hardly correct to speak of a new trial in case of a default, where there was no old trial, courts are permitted to set aside the default for proper reasons, and grant a trial; and this is sometimes, in popular language, called "a new trial." Such is the special law in Maine on a petition filed. See Revised Statutes. But I am aware of no act of congress to that effect, nor of any formal adoption in practice or otherwise by the United States or their courts, of the statute of Maine on this subject. The words of the judiciary act seem to contemplate only motions as at common law for new trial, and before judgment is rendered after a verdict. See post.

In this situation of that act, and the practice under it in the courts of the United States, so far as it has come to my knowledge, it requires some careful discrimination to see how a new trial can be legally granted in the present case, on a petition, and after the lapse of so long a time as two years between the default and the filing of the petition, and where in the mean time judgment has been rendered and carried into effect. The form of asking it by petition probably did not exist when the act of May 8th, 1792, passed (1 Stat. 275), and of course not being then or previously adopted,

has not by any action of congress since, or by any judicial decisions on former acts, been put in force in any particular case, cited at the bar, or found by the court.

The question then remains to be settled, whether it can be allowed as a right under the state laws, and not inconsistent with any legislative action had by congress. The law of Massachusetts passed since, allowing partition of lands on petition between tenants in common in that state, has been considered by this court as binding on it in Ex parte Biddle [Case No. 1,391]. I have no doubt that decision was correct under the 34th section of the judiciary act of 1789, providing "that the laws of the several states, except where the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply." A new trial is a proceeding at common law, quite as much as a petition for partition, and a hearing to obtain it may be regarded as a hearing at common law on a common law question. The subject-matter, also, to which it relates here, was a suit at law which may have been what was meant by the expression, "Trials at common law," as distinguished from trials in equity. "Suits at common law," in the 7th amendment of the constitution, has been held to mean merely "cases in law." 1 Baldw. 405 [Baker v. Biddle, Case No. 764]; 1 Baldw. 554 [Bains v. The James & Catherine, Case No. 756]; [Kendall v. U. S.] 12 Pet. [37 U. S.] 634. That is, cases not in equity or admiralty. Parsons v. Bedford, 3 Pet. [28 U. S.] 433, 447. And "suit" means a right litigated between parties in a court of justice. Kendall v. U. S., 12 Pet. [37 U. S.] 524, 645; [Plowden v. City Council] 2 Pet. [27 U. S.] 449; Holmes v. Jennison, 14 Pet. [39 U. S.] 540, 566. As in a habeas corpus or mandamus as well as in a common action. But if that expression, "at common law," meant only a "litigation in court," instead of a direction purely ministerial or as to process only, which seems to have been the idea of some, this was of that character likewise. Conkl. Pr. 95. The only difficulty, then, remaining is, whether the statutes of the United States have not legislated on this subject fully, and by that have excluded any subsequent legislation of the states as applicable to the same subject. I have no doubt that the clause in the 17th section of the judiciary act, providing "that all the said courts of the United States shall have power to grant new trials in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law," would justify the grant of a new trial in such case, though it should be prohibited by the laws of the state where the application is made. Picquet v. Swan [Case No. 11,134]. But whether the states may not pass laws granting such trials in different or additional cases

and in new modes, and which the courts of the United States ought to enforce in cases coming before them, is a distinct question.

After careful consideration, I am inclined to the conclusion that the act of congress is a provision for only one class of cases, and to that extent cannot be modified or limited by the states. But that in other classes of cases, if the state laws give merely other and additional remedies, they must be regarded as not conflicting nor inconsistent, but in harmony with the other remedy by act of congress, leaving that as before, and merely providing a further and new remedy in certain specified cases. In such cases, to adopt the new form and right is only to conform to the state statutes, where no act of congress applies, and is doing this under the authority of the 34th section. But it is not to nullify or disregard the 17th section in instances coming within its purview of motions, where there have been verdicts, because it leaves that in such cases in full force. Finally, as the state statute purports to confer an additional right or power, and not one in conflict with what is conferred by the judiciary act, I feel a reluctance to deny a claim made under it, and the more especially as by granting a new trial, the merits of the parties in their original controversy will not be decided on, but left open for a full and just hearing and disposition on the new trial.

It seems to be well settled in Robinson v. Campbell, 3 Wheat. [16 U. S.] 212, 222, that the laws of the states must govern as to rights, when the acts of congress do not provide exclusively on the subject. 5 Mason, 39 [Picquet v. Swan, Case No. 11,134]. See, also, U. S. v. Ames [Case No. 14,441]. But mere remedies remain as at common law, and as in the states when adopted originally, from 1789 to 1793, except as altered since by congress or the United States courts. 3 Wheat. [16 U. S.] 222. If state laws operate on new trials, they of course must govern if no act of congress interferes and forbids it. There is none which is repugnant, and like two statutes on the same subject by the same legislature, one does not repeal or annul the other, unless words of repeal are used, or the provisions in one are opposed or repugnant to those in the other. Beals v. Hale, 4 How. [45 U. S.] 37; Washington, J. [Houston v. Moore] 5 Wheat. [18 U. S.] 22. So if any state law makes that legal which was before only equitable, it must prevail. [Robinson v. Campbell] 3 Wheat. [16 U. S.] 223. The petition given in this case is not merely a new remedy or form, but a new right; and that right can be recognised or adopted without any act of congress, except the 34th section of the judiciary law before quoted. That 34th section makes the state laws a rule to govern future decisions, in a trial at common law; and when they do not give merely a new form of prosecuting for an old right, they must be complied with. Way-

man v. Southard, 10 Wheat. [23 U. S.] 1, 10. The mere forms of proceeding standing alone, are governed by the other acts of 1789 and 1790, made permanent 8th May. 1792. [Wayman v. Southard] 10 Wheat. [35 U. S.] 24. And a change of them only by the states, is not binding on this court till adopted by congress or the supreme court. Beers v. Haughton, 9 Pet. [34 U. S.] 330. But here new rights, rather than new forms for old ones, are conferred by the Maine statute. A new trial is given in new cases—in those where it did not exist before, and a mode to enforce them is provided.

I am disposed to sustain these new rights, r-)t as new forms for rights before existing, as none did before exist under the present c'rcumstances, but as new rights allowed to be prosecuted in a way specially pointed out there. In such cases parties have a claim to the protection of such rights in this court when residing, so that we have jurisdiction as fully as they have it in the state courts. Thompson v. Philips [Case No. 13,974]; [Satterlee v. Matthewson] 2 Pet. [27 U. S.] 413; [Lewis v. Marshall] 5 Pet. [30 U. S.] 470; Lorman v. Clark [Case No. 8,516]. In U. S. v. Knight, 14 Pet. [39 U. S.] 301, 315, is a strong illustration on this point, allowing a debtor of the United States to swear out of jail under a state statute, though no such privilege had been granted by congress. This 34th section of the judiciary act is a very important one, and reaches all rules as to civil rights by state statutes within their jurisdiction, where congress have not regulated the case, but probably does not include criminal matters. 2 Burr's Tr. App. 185. It includes rules of evidence altered by state statutes. McNeil v. Holbrook, 12 Pet. [37 U. S.] 84, 89. It reaches usages in states, that have the force of laws. Swift v. Tyson, 16 Pet. [41 U. S.] 18. And liens by judgments. [Case No. 13,974.] And all statutes of states regulating most rights, and especially local laws as to real estate, not inconsistent with the laws and rights of the United States. The Orleans v. The Phoebus, 11 Pet. [36 U. S.] 175. But, as before remarked, it does not reach mere changes of process by state statutes. [Wayman v. Southard] 10 Wheat. [23 U. S.] 24. Nor give jurisdiction under them, which did not before exist in the United States courts. [Barron v. Baltimore] 7 Pet. [32 U. S.] 243; [U. S. v. Knight] 14 Pet. [39 U. S.] 315. Nor include mere judicial decisions on general questions and commercial topics at large. [Swift v. Tyson] 16 Pet. [41 U. S.] 19.

A new trial of the merits is therefore to be had at the next term. The default must of course be allowed to be stricken off; and if appropriate pleadings were not made before, amendments be allowed to make them. Garland v. Davis, 4 How. [45 U. S.] 154. The form of having the new trial seems by the Maine statute to be by a writ of review, sued out and served on the opposite party.

But if any other form has been adopted in this state or in this court, as by bringing the old action forward, it can be followed.

NOTE [from original report]. At May term, 1847, this action was brought forward, and a notice served on the attorney of Sohier, the executor of Tuckerman, to appear and defend. The attorney declined to defend, but stated in court, that Tuckerman had not taken out letters of administration in Maine, and was not bound to defend this cause; and further suggested, that no practice existed in Maine, under the statute, as to granting new trials on petition, which allowed them in this form, but only by a writ of review. It seemed doubtful how the question stood, and a further inquiry into it was instituted. But in the mean time the court expressed no doubt that the service of the motion or of a writ of review must be on some administrator, whose letters are taken out in this state. See cases in Aspden v. Nixon, 4 How. [45 U. S.] 467.

The presiding judge observed, that as Tuckerman was stated to have left property still unsold in this state, some other person could take out letters here and administer on it, if Mr. Sohier declined, and then a good service could be made on him. Sohier, or his attorney, might be willing to appear to resist a new trial, but not be required to defend the original suit on a trial of the merits, until administration had been granted to Sohier in this state. Whether, however, he is not now estopped, and his attorney for him to deny he is an administrator in this state, after appearing and defending the petition for a new trial, is a graver question, and will be considered hereafter, if necessary.